IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OUSMANE SAVANE,<br>　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| ALEJANDRO MAJORKAS,<br>　and MICHAEL A. CATALANO,<br>　　　　　Defendants. | NO.  24CV224 |

## MEMORANDUM OPINION

Plaintiff Ousmane Savane, who hails from Cote D'Ivoire, was admitted to the United States as a lawful permanent resident by applying through the Department of State's Diversity Visa program, which allows individuals from regions with low rates of immigration to the United States to apply into a random lottery for a visa.[1] He then applied to become a naturalized citizen. The United States Citizenship and Immigration Service ("USCIS") denied his application, predicating its decision on alleged misrepresentations in his Diversity Visa program paperwork. After his administrative appeals were unsuccessful, Savane petitioned this Court pursuant to 8 U.S.C. § 1421(c) to review the USCIS's denial of his naturalization application. He named as defendants Secretary of Homeland Security Alejandro Mayorkas[2] and USCIS's Philadelphia Field Office Director, Michael Catalano (together, "the Government"). The Government now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

---

[1] To be eligible for the lottery, the applicant must be a native of one of the target countries (*i.e.*, one of the countries with low rates of immigration to the United States) and must meet certain education or work experience requirements.  *See id.* § 1153(c).

[2] Although Savane spelled Secretary Mayorkas' name as "Majorkas" in the caption, the correct spelling is "Mayorkas."

1

I. **BACKGROUND**

   A. **Statutory and Regulatory Framework**

Savane's story begins with information he submitted—or, rather, failed to submit in his application to the Diversity Visa program. The United States Department of State administers the Diversity Visa program. *See* 8 U.S.C. § 1153(c); *see also* Registration for the Diversity Visa Immigrant (DV-2009) Visa Program, 72 Fed. Reg. at 57093. The Secretary of State is directed to issue regulations necessary to carry out the Diversity Visa lottery. 8 U.S.C. § 1154(a)(1)(I)(ii)(III); *Smirnov v. Clinton*, 806 F. Supp.2d 1, 23 (D.D.C. 2011), *aff'd*, 487 F. App'x 582 (D.C. Cir. 2012).

To apply to enter the lottery, individuals must fill out a stack of paperwork. First an individual must petition to be considered. 22 C.F.R. § 42.33(b). The electronic petition, known as an "eDV," requires biographical information such as the petitioner's name, date and place of birth, gender, and more. *Id.* § 42.33(b)(1). At issue here, the eDV requires that the petitioner provide information about their spouse and children, regardless of whether the petitioner intends to bring the spouse or children with them to the United States. *Id.* § 42.33(b)(1)(v).

Once the eDV is complete, the individual becomes eligible for the lottery. If they are randomly selected from the lottery, they must then fill out an Application for Immigrant Visa and Alien Registration, otherwise known as a "DS-230." Part I of the DS-230 requires applicants to provide the "Names, Dates and Places of Birth, and Addresses of ALL Children." The instructions on how to complete Part I states that an applicant must "[m]ark questions that are Not Applicable with 'N/A.'"

After filling out the DS-230, applicants are interviewed by a consular official in their home country. The Department of State demands that consular officers who process Diversity

Visa applications—including the officers who interview an applicant after the submission of a DS-230—"must" deny an applicant's visa if an applicant includes in their DS-230 "a spouse or child who was not included in their" eDV, "unless such spouse or child was acquired subsequent to submission" of the eDV.  9 Foreign Affairs Manual § 42.33 N6.6 (2010).

If an applicant is approved for a visa, they may obtain lawful permanent resident ("LPR") status in the United States.  A lawful permanent resident may seek to become a naturalized citizen by filling out an Application for Naturalization, otherwise known as an N-400.  To be eligible for naturalization, an applicant must establish two things:  First, that they have "resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . immediately preceding the date of filing the application;" and, second, that they are "a person of good moral character."  8 U.S.C. § 1427(a).  An officer from USCIS may interview the applicant in relation to their N-400 application.

Should the Application for Naturalization be denied, an applicant can file an administrative appeal, otherwise known as an N-336, and request a hearing.  If that appeal is unsuccessful, then the individual can petition "the United States district court for the district in which" the individual "resides" to review the USCIS's decision.  8 U.S.C. § 1421(c).[3]

### B. Factual Background

The following facts are not in dispute.  Savane hired a "coach" to complete the eDV for him and submitted the eDV in 2011.  Although his eDV is not in the record, both parties agree that he did not include biographical information of his children, despite the regulatory requirement, 22 C.F.R. § 42.33(b)(1)(v), that he must.

His eDV submitted, Savane was selected from the lottery.  Accordingly, his next move

---

[3] Although the reviewing court "shall, at the request of the petitioner, conduct a hearing . . . on the application," *id.*, Savane has not requested a hearing.

was to fill out Part I of the DS-230. He did so, responding "N/A" to a request that he "List Names, Dates and Places of Birth, and Addresses of ALL Children." He then signed Part I of his DS-230, attesting that his answers to the questions on the application were "true and complete to the best of [his] knowledge and belief." He was then interviewed by a United States consular officer in Cote D'Ivoire. During that interview, he was not asked if he had children, and he did not disclose that he had any. Based on his eDV, DS-230, and DS-230 interview, he obtained LPR status in May 2012.

Shortly thereafter, Savane immigrated to the United States and has lived here ever since. About eight years later, in September 2020, he submitted his N-400—his Application for Naturalization. There, for the first time in the immigration process, Savane disclosed that he had four children. In that same document, he admitted that he had "given . . . U.S. government officials . . . information or documentation that was false, fraudulent or misleading." However, in the next question on the N-400, he denied that he had "ever lied to any U.S. government officials to gain entry or admission into the United States or to gain immigration benefits while in the United States." Although he did not use an interpreter or "coach" to complete his N-400, he had the assistance of counsel in preparing the N-400. He also signed the application, indicating its truthfulness.

Savane was interviewed again by a USCIS officer concerning his N-400 in August 2021. There, he made changes to his N-400, including listing a fifth child, who was born after he initially submitted the N-400. He also changed his answer to the question: "Have you ever lied to any U.S. government officials to gain entry or admission into the United States or to gain immigration benefits while in the United States?" from a "No" to a "Yes."

He explained during his N-400 interview that he did not disclose the existence of his

children on his eDV or on his DS-230 because they were born into a traditional, not legal, marriage.  In September 2022, USCIS determined that Savane would not be eligible for naturalization, because, in its view, he had not been admitted for permanent residence lawfully due to the omissions on his eDV and DS-230.  Savane requested an N-336 review and a hearing.  In that request, he acknowledged that "it was wrong for [him] to misrepresent the fact that he had two young children," at the beginning of his application process, but argued that the nondisclosure was immaterial.  USCIS did interview Savane again after which it affirmed the decision to deny Savane's N-400 application.

## II.     LEGAL STANDARD

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion."  *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52).  "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the

record there exists a genuine dispute over a material fact." *Id.* (citation omitted).  A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

### III. DISCUSSION

#### A. Law Governing Review of Naturalization Decisions

The Court reviews Savane's challenge to the USCIS's decision to deny his Application for Naturalization *de novo* and makes "its own findings of fact and conclusions of law." 8 U.S.C. § 1421(c).  The applicant "has the burden of proving 'by a preponderance of the evidence that he or she meets all of the requirements for naturalization.'" *Saliba v. Att'y Gen. of United States*, 828 F.3d 182, 189 (3d Cir. 2016) (quoting 8 C.F.R. § 316.2(b)).  "'Strict compliance with all the congressionally imposed prerequisites to' citizenship is required, and 'the burden is on the alien applicant to show his eligibility for citizenship in every respect.'" *Id.* (cleaned up) (quoting *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); *INS v. Pangilinan*, 486 U.S. 875, 886 (1988)).  So "doubts . . . concerning a grant of [citizenship] . . . should be resolved in favor of the United States and against the claimant." *United States v. Manzi*, 276 U.S. 463, 467 (1928).

The Government argues that its Motion for Summary Judgment must be granted because Savane cannot prove that he acquired his immigrant visa in compliance with the immigration laws, and therefore he cannot establish that he was "lawfully" admitted as an LPR to the United States in accordance with 8 U.S.C. § 1429, which provides that "[e]xcept as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of" the Immigration and Nationality Act (INA).

The INA defines lawful admittance as having been "lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with all immigration laws." *Id.* § 1101(a)(20).  An applicant must have complied "with substantive legal requirements" when he applied to enter the United States, not just have followed the proper procedures to be admitted.  *Gallimore v. Att'y Gen. of United States*, 619 F.3d 216, 223 (3d Cir. 2010) (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)).  Without that substantive compliance, a grant of LPR status is "void *ab initio*," *id.* at 224 n.6 (quoting *Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010)), and any Application for Naturalization predicated on that void LPR status must be denied, *Injeti v. U.S. Citizenship & Immigr. Servs.*, 737 F.3d 311, 315-16 (4th Cir. 2013); 8 U.S.C. § 1429 (with exceptions not at issue here, "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence . . . .").

The parties dispute whether Savane "*willfully* misrepresent[ed] a material fact" on his eDV and DS-230.  8 U.S.C. § 1182(a)(6)(C)(i) (emphasis added).  If he did, he could not become a naturalized citizen because he would not be in substantive compliance with the immigration laws.  *Saliba*, 828 F.3d at 190-93.

However, it is not necessary to decide whether Savane's omissions were willful because 8 C.F.R. § 103.2(a)(2)—which applicants must comply with in order to receive LPR status, *see Koszelnik v.Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 180 n.20 (3d Cir. 2016)—requires only that an applicant certify the information in his application is "true and correct."  As a textual matter, 8 C.F.R. § 103.2(a)(2) makes no mention of the willfulness of a misrepresentation, suggesting that whether an omission was willful or unintentional has no bearing on the analysis.  *See Injeti*, 737 F.3d at 318; *compare* 8 C.F.R § 103.2(b) ("By signing the benefit request, the

7

applicant . . . certifies under penalty of perjury that the benefit request . . . is true and correct.") *with* 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States . . . under this chapter is inadmissible.").

Instead, 8 C.F.R. § 103.2(a)(2) impliedly "limit[s] the duty to ensure that an application is 'true and correct' to *material* facts." *Injeti*, 737 F.3d at 318 n.5 ("That is to say, we do not believe a mistake or misstatement with *no possible bearing on an applicant's eligibility*, and which is therefore *immaterial*, necessarily violates the duty imposed by § 103.2(a)(2)." (emphasis added) (internal citations omitted)) (cited in *Koszelnik*, 828 F.3d at 180 n.20). Therefore, "an applicant fails to comply with the relevant legal requirements for admission when material information is omitted on his application, 'regardless of whether the misrepresentation on [his] application was willful.'" *Koszelnik*, 828 F.3d at 180 n.20 (quoting *Injeti*, 737 F.3d at 318) (alterations in original).

So, the remaining question is whether Savane's omission of his children on his eDV and DS-230 was material. If it was, then that is the end of the matter. *Koszelnik*, 828 F.3d at 180 n.20.

### B. Materiality

In the immigration context, a "fact is material if: (1) the alien is excludable on the true facts, (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded, or (3) the misrepresentations had a natural tendency to influence the decisions of the decision-making body to which it was presented." *Saliba*, 828 F.3d at 190 n.7 (internal quotations and citations omitted). But materiality does not require that "officials necessarily would have denied

8

[the] visa application had they known the truth." *Gozun v. Att'y Gen. of U.S.*, 375 F. App'x 276, 279 (3d Cir. 2010); *Injeti*, 737 F.3d at 316 ("[F]inding that a misrepresentation is material does not require concluding that it necessarily would have changed the relevant decision").

Savane's omission "tend[ed] to shut off a line of inquiry which is relevant to" his "eligibility and which might well have resulted in a proper determination that he be excluded." *Saliba*, 828 F.3d at 190 n.7. If he had been truthful on his DS-230, then the discrepancy between his DS-230 and eDV would have resulted in a denial of his application for a visa, because the State Department requires consular officers to deny "applications of registrants who list on their" DS-230 "a spouse or child who was not included in their" eDV. 9 Foreign Affairs Manual § 42.33 N6.6 (2010); *see also Kanu v. Garland*, 672 F. Supp.3d 108, 116 (E.D. Va. 2023) (quoting 9 Foreign Affairs Manual § 42.33 N6.6 (2008)).

Additionally, because the number of Diversity Visas available per year is capped, 8 U.S.C. § 1151(e), and children of applicants (should the applicant-parent choose to bring them) are included in the count toward that cap, 8 U.S.C. § 1153(d), Savane's omission of his children tended "to shut off" another "line of inquiry which is relevant to" his "eligibility and which might well have resulted in a proper determination that he be excluded." *Saliba*, 828 F.3d at 190 n.7 (internal quotations omitted); *see also Ohene v. Zanotti*, 2022 WL 479771 at *7 (E.D. Va. Feb. 16, 2022). Had Savane been truthful about the existence of his children on his eDV and DS-230, the consular officer who interviewed him regarding his initial application for LPR status might have inquired about his children and decided—depending on Savane's answers about whether he intended them to immigrate with him—to deny his application.

Savane asserts that because he did not intend to bring his children to the United States with him, his omission of their existence cannot be material, because any answer he might have

9

given to a consular officer's inquiry about them would not have resulted in him being denied a visa.  But it does not matter that even if Savane was truthful from the get-go he might still have been granted LPR status.  *Gozun*, 375 F. App'x at 279 (materiality does not require that "officials necessarily would have denied [the] visa application had they known the truth"); *Injeti*, 737 F.3d at 316 ("[F]inding that a misrepresentation is material does not require concluding that it necessarily would have changed the relevant decision.").  His omission deprived the consular officer of an opportunity to ask about his children; it shut off a line of inquiry.[4]

Because Savane does not raise any genuine disputes of material fact and because the Government is entitled to judgement as a matter of law, the Government's Motion for Summary Judgment will be granted.

An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**

---

[4] Savane argues that no line of inquiry was shut off because he was not asked if he had any children during his DS-230 interview.  That argument is circular.  The consular officer had no reason to ask Savane about his children, because on both his visa application forms he omitted the fact that they existed.